UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

INFINITY GLASS AND RESTORATION, LLC,

                      Plaintiff,

    v.

LABORERS' INTERNATIONAL UNION OF NORTH
AMERICA, LOCAL #210,

                      Defendant.

**AMENDED
DECISION AND ORDER**
09-CV-460S

## I. INTRODUCTION

This case arises from a dispute over Plaintiff Infinity's hiring of members of the carpenter's union ("Carpenters" or "Local 289") to perform tasks that had been assigned to Defendant Laborers Union ("Laborers" or "Local 210") in connection with Infinity's contract for window work at Buffalo Public School #206, South Park High School.

Infinity and the Laborers are parties to a project labor agreement, the "Joint Schools Construction Board School Construction and Rehabilitation Program, Workforce Development and Diversity Program Agreement" ("PLA")[1], which governs the assignment of work and the resolution of disputes arising in connection with new construction and renovation work at various Buffalo Schools, including School #206. (Docket No. 1, ¶ 7, Ex. A.) Local 210 forwarded to Infinity a grievance alleging violations of the PLA, and subsequently served a Notice to Arbitrate. This action followed, in which Infinity seeks an order permanently enjoining the Laborers from arbitrating its dispute under Article IX of the

---

[1] The Carpenters are also a party to the PLA.

1

PLA.

Immediately upon filing its Complaint, Infinity moved for an expedited hearing and a preliminary injunction. (Docket No. 2). The motion to expedite was granted and the motion for preliminary injunction is now before the Court. Local 210 has moved for leave to file a sur-reply (Docket No. 13), a copy of which it appended to its motion. The motion for leave to file a sur-reply is granted, and the Court will consider the Affirmation of Richard D. Furlong, Esq., dated June 2, 2009, in connection with Infinity's preliminary injunction motion.

## II. BACKGROUND

The following facts are undisputed for purposes of the instant motion. Manning Squire Henning ("Manning") was awarded a contract for work at South Park High School (the "School Project"), which included, *inter alia*, window work. (Docket Nos. 6-3, ¶ 5; 6-4.) Manning subcontracted wood window installation to Infinity. (Docket No. 6-3 ¶¶ 5-6.)

The PLA requires that once a contract for work is awarded, and prior to the anticipated start date, the contractor will convene a pre-job meeting at which work assignments will be made. (Docket No. 1, Ex. A ("PLA"), Art. X, sec. 2(b)(1)-(3).) A pre-job conference was held in connection with the School Project on October 31, 2007. (Docket No. 6-3, ¶ 5.) Samuel Capitano, a Local 210 business agent, attended the conference, as did Thomas Burke, representing the Carpenters Union, and David Ciurzynski, a Manning manager. (Docket Nos. 6-3, ¶ 8; 6-5.) Manning made work assignments for Infinity's wood window work as follows: "Carp., Install; Laborers - Clean-up." (Docket Nos. 6-3, ¶ 8; 6-5.) Ciurzynski also determined that the unloading of material

2

at the job site and its transfer to the point of installation would be assigned to the Laborers.[2] (Docket No. 6-3, ¶ 6.)

Infinity started work on the School Project in August 2008. (Docket No. 1, ¶ 10.) On April 8, 2009, Peter Capitano, a Local 210 business agent, visited the School Project on another matter and observed an individual cleaning and sweeping debris from windows. (Docket No. 6, ¶ 3.) Capitano asked the worker if he was a laborer, to which the worker responded that he was not, but was a carpenter. (*Id.*) Capitano then asked whether a laborer was working with him on the job, to which the worker also responded no. (*Id*.) There is nothing in the record here that explains when, why, or by whom Infinity's cleanup work was reassigned to the Carpenters. There is no indication that Local 210 received notice of the reassignment prior to Capitano's site visit.

Local 210 notified Infinity of its grievance by letter dated April 13, 2009, alleging, *inter alia*, that Infinity violated Article X of the PLA by failing to hire Local 210 members to perform work assigned to it at the pre-job conference held on October 31, 2007. (Docket No. 1, Ex. B.) Local 210 subsequently served on Infinity a Notice of Intention to Arbitrate. (*Id.*, Ex. C.) Infinity forwarded that Notice to Thomas Burke of the Carpenters Union, who, in a letter to the Laborers dated May 6, 2009, stated that the grievance involves a jurisdictional dispute because Local 210 is attempting to claim Carpenters' work. (*Id.*, Ex. D.) Infinity subsequently demanded that Local 210 withdraw its Notice and proceed in accordance with the PLA's jurisdictional dispute resolution mechanism. (*Id.*, Ex. E.) When

---

[2] The Carpenters state that the work they were assigned at the pre-job conference "involves removing existing windows, sash, stops, weights and chains, and replacing the old components with new. The windows are re-installed and then trimmed-out with new materials." Local 289 makes no mention of cleanup, unloading, or transporting. (Docket No. 10, Ex. A.)

Local 210 failed to do so, this action ensued.

## III. DISCUSSION

**A.    The PLA**

The PLA states that, in recognition of the special needs of Buffalo's 10-year school rehabilitation and replacement project, "and to maintain a spirit of harmony, cooperation, labor-management peace and stability during the term of this Agreement, the parties agree to establish effective and binding methods for the settlement of *all* misunderstandings, disputes, or grievances which may arise." (Art. III (emphasis supplied).)

The PLA's provisions include the collective bargaining agreements of the trade unions that are signatories to the PLA, and those agreements appear at Schedule A of the PLA ("Schedule A agreements"). (Art. IV, sec. 5(a).) However, where a subject addressed in the body of the PLA is also covered by a Schedule A agreement, the PLA's provisions prevail. (*Id.*) Any question as to whether the PLA or a Schedule A agreement governs a particular issue is resolved through the PLA's grievance and arbitration procedures. (Art. IV, sec. 5.)

All told, the PLA contains three distinct dispute resolution procedures. The first appears at Article VIII, titled "Work Stoppages and Lockouts." Section 1 of this Article forbids strikes, picketing, work stoppages, slowdowns, or other disruptive activities by unions or employees, and also forbids lockouts by any contractor. Article VIII goes on to set forth a procedure for notification and arbitration, should an alleged violation occur. The matter is heard by a permanently assigned arbitrator, or an approved alternate. (Art. VIII, sec. 3 and 4.)

The next procedure appears in Article IX, titled "Disputes and Grievances." Article IX again notes the importance of continuous and uninterrupted performance of the work, and states that contractors, unions, and employees "agree to resolve disputes in accordance with the arbitration provisions set forth in this Article." (Art. IX, sec. 2.) Specifically, parties to the PLA agree that:

> *Any* question arising out of and during the term of this Agreement involving its interpretation and application (*other than trade jurisdictional disputes* or alleged violations of Article VIII, Section 1) shall be considered a grievance and subject to resolution under the following procedures.

(Art. IX, sec. 3 (emphasis supplied).) Those procedures involve a three-step grievance and arbitration process, with four permanent arbitrators assigned to hear disputes on a rotation basis. (*Id.*)

The third dispute resolution procedure appears at Article X, titled "Jurisdictional Disputes." This Article provides a detailed procedure for the assignment of work to the various construction trades (sec. 2(a) and (b)), and a process for settling "any jurisdictional dispute over the Contractor's assignment of work" (sec. 2(c).). That process includes notification and, if the dispute is not resolved within a specified time period, referral of the dispute for resolution in accordance with the Procedural Rules of the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry. (Art. X, sec. 2(c)(2).) Although not expressly stated in the PLA, it appears that a referred jurisdictional dispute also proceeds to arbitration. (Art. X, sec. 2(c)(3), making reference to arbitrator's determination.)

5

**B.	The Parties Positions**

Infinity argues that Local 210's grievance presents a "jurisdictional dispute" under Article X of the PLA, and as such is excluded from the grievance and arbitration provisions set forth in Article IX. Infinity seeks a preliminary injunction on this basis, and an ultimate declaration that Local 210's grievance is not arbitrable under Article IX of the PLA. Such a declaration necessarily includes a determination on the nature of Local 210's grievance.

Local 210 counters that its grievance is not jurisdictional because it has never had a dispute with the Carpenters over the respective job assignments Manning made at the pre-job conference; rather, it is Infinity's failure to comply with those assignment that is at issue. According to Local 210, its grievance is one for breach of contract and is arbitrable under Article IX. Alternatively, Local 210 urges that where the parties have a fundamental dispute over the nature of the grievance, an arbitrator, rather that the court, should make that threshold determination.

**C.	Analysis**

At the outset, I note Local 210's apparent agreement that jurisdictional disputes are excluded from grievance and arbitration under Article IX. (Docket No. 6-6 ¶ 15.) So the only questions here are: what is the nature of Local 210's grievance, and does the court or an arbitrator answer that question.

Local 210 relies on <u>International Union of Operating Eng'rs Local Union No. 17 v. Swank Associated Co., Inc.</u>, in support of its argument that the nature of its grievance must be decided by an arbitrator. 181 F. Supp.2d 240 (W.D.N.Y. 2001). In <u>Swank</u>, the union urged that its grievance should proceed to arbitration under a collective bargaining

6

agreement, while the contractor contended the matter was a jurisdictional dispute that must be submitted to the International Unions for resolution. The court reviewed the applicable provisions of the collective bargaining agreement, which like the PLA at issue here, included one article relating to grievance procedures and another relating to jurisdictional disputes. The court determined that the broad grievance procedures provision— which vested the arbitrator with authority to resolve "any dispute aris[ing] over the interpretation, application or meaning of any provision," but excluded "any powers to resolve jurisdictional disputes where the exercise thereof would conflict or potentially conflict with the Impartial Jurisdictional Disputes Board"—gave the arbitrator "jurisdiction to decide whether a matter involves a 'jurisdictional dispute.'" *Id.* at 242-43, 245.

Infinity erroneously attempts to distinguish the instant case on the ground that the agreement at issue in <u>Swank</u> did not exclude jurisdictional disputes from its grievance procedure while the PLA does. Nevertheless, a question as to the extent of an arbitrator's vested powers under the PLA rests, not in the <u>Swank</u> holding, but in the language of the particular agreement at issue here.

The structure, text, and context of the PLA give every indication that, to the extent the nature of a grievance is at issue, that threshold determination is to be made by an Article IX arbitrator. At Article III, the parties agree to establish binding methods for resolving *all* misunderstandings arising in connection with the 10-year project. Articles VIII and X each set forth a procedure for resolving the merits of a specific type of dispute. Article IX is a catch-all provision which provides for arbitration of "*any question arising out of . . . [the PLA] involving its interpretation and application,*" except for determinations on

the merits of "trade jurisdictional disputes or alleged violations of Article VIII, Section 1." (Art. IX, sec. 3.)

I find that the very broad language of Article IX encompasses a procedural determination as to whether a particular grievance should be decided on the merits under Article VIII, IX, or X. In other words, a dispute over whether a grievance is jurisdictional or non-jurisdictional in nature is a matter for an Article IX arbitrator to decide. If the arbitrator determines that the underlying dispute is non-jurisdictional, he or she will presumably proceed to a determination on the merits under Article IX.[3] If, on the other hand, the arbitrator determines the grievance is a jurisdictional dispute,[4] the proper course will be to refer the parties to the dispute resolution procedure in Article X.

The facts and contract language at issue here are quite similar to those presented in Huber, Hunt & Nichols, Ind. v. United Ass'n of Journeymen and Apprentices of the Plumbing and Pipefitting Industry, Local 38, 282 F.3d 746 (9th Cir. 2002). There, the parties were signatory to an umbrella labor agreement, the purpose of which was to unify dispute resolution procedures and quell labor strife. Like the PLA, the umbrella agreement in Huber incorporated the collective bargaining agreements of signatory unions. *Id.* at 747-48. The umbrella agreement provided procedures for the resolution of jurisdictional disputes (article 5) and non-jurisdictional disputes concerning any application or interpretation of that agreement (article 6). *Id.* at 748. Non-jurisidictional disputes

---

[3] Assuming, of course, that the grievance does not fall under Article VIII, sec. 1.

[4] I note that at least one other dispute under the PLA, factually similar to the grievance at issue here, has proceeded to arbitration under Article X. Burke v. Hogan, 418 F. Supp. 2d 236 (W.D.N.Y. 2005) (work originally assigned to carpenters reassigned to glaziers). However, there is no indication that the parties disagreed as to the appropriate dispute resolution procedure in that case.

8

concerning the application or interpretation of an incorporated collective bargaining agreement were to be decided according to the collective bargaining agreement's own grievance procedures. *Id.*

Local 38 filed a grievance under its collective bargaining agreement alleging that a subcontractor improperly assigned its work to other trades. *Id.* The contractor, in turn, filed a grievance under the umbrella agreement claiming the union was attempting to bypass the umbrella agreement's jurisdictional dispute resolution procedures. Two awards issued. The contractor's grievance was decided in its favor and the designated article 6 arbitrator ordered the union to use that agreement's article 5 jurisdictional dispute resolution procedures. A determination that the dispute was non-jurisdictional was issued on the union's grievance. The question before the Ninth Circuit was whether the respective arbitrators had the powers to arbitrate the matters before them.

The Circuit Court first determined that the question of the character of the dispute turned on the application and interpretation of the phrase "jurisdictional dispute" in the umbrella agreement, not on language of the collective bargaining agreement. *Id.* at 750. Once that determination was made, the Circuit concluded, on contract language and a construct very similar to those at issue here, that when the parties agreed to consign all questions concerning the application or interpretation of the umbrella agreement, excluding jurisdictional disputes, to an arbitrator, they were implicitly assigning the arbitrator the threshold determination whether a dispute is jurisdictional. *Id.* The Circuit Court went on to note that "[u]nder any other interpretation, a trip to court would be necessary whenever the parties disagreed, or even purported to disagree, whether a dispute was 'jurisdictional'

9

in character," and "'[t]he arbitration clause would be swallowed up by the exception.'" *Id.* (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 584, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960).

In this Court's view, the question of whether Local 210's grievance presents a jursidictional or non-jurisdictional dispute turns on an interpretation of the PLA's use of the term "jurisdictional dispute" and application of its separate dispute resolution procedures. Questions of interpretation and application rest squarely with an Article IX arbitrator.

In its reply, Infinity suggests that such a result would conflict with another decision issued recently in this District, Mascaro Constr. Co., L.P., v. Local Union No. 210, Laborers Int'l Union of North America, AFL-CIO, 09-CV-0427T, 2009 U.S. Dist. LEXIS 4135 (W.D.N.Y. May 15, 2009). I disagree.

In Mascaro, Local 210 determined that Mascaro had violated the subcontracting clause of the parties' collective bargaining agreement when it subcontracted the unloading and handling of door products to a company employing carpenters to do the work. 2009 U.S. Dist. LEXIS 4134, at *1. Mascaro challenged Local 210's authority to make such a determination. *Id.* at *1-2. The Laborers contended that the agreement granted it the sole authority to determine subcontracting violations. *Id.* at 2.

In that case, Judge Telesca found that, to substantiate a subcontracting grievance, Local 210 would necessarily need to determine that it was entitled to the work. *Id.* at *8-9. That underlying determination was one of jurisdiction which, the Court found, was one Local 210 could not make under the terms of its collective bargaining agreement. *Id.* In short, a claim for breach of the subcontracting provision necessarily implicated jurisdiction.

10

*Id*. at *12.  Judge Telesca went on to note that "[i]f the Laborers' were allowed to bring breach of contract claims via the grievance procedure under the circumstances herein, the Laborers' could simply claim that *any* work that was not awarded to them was work that fell under the terms of the Laborers' CBA, and could then initiate a grievance, and under the terms of the CBA, unilaterally decide that the work in dispute should have been awarded to the Laborers[,] . . . unilaterally determine that the employer violated the subcontracting clause of the CBA, and obtain damages." *Id*. at *14 (emphasis in original).  Judge Telesca understandably characterized such a result as absurd and contrary to the spirit of labor laws intended to promote industrial peace.  *Id.*

The instant case involves an entirely different agreement than was at issue in Mascaro and, in addition, an entirely different construct.  This case does not involve a unilateral determination or the attempt to obtain one.  It raises the question of which neutral, the court or an arbitrator, should determine the nature of the underlying dispute, which in turn will determine which neutral will hear the merits.

Infinity's other cited cases are distinguishable on the grounds that one party to an agreement was attempting to avoid arbitration altogether, or to avail itself of a forum for dispute resolution outside the parties' agreement.  Here, Local 210 has a question arising from the PLA and seeks to arbitrate it under one of the PLA's dispute resolution provisions.  The question of which of multiple, contractually-defined procedures is appropriate to a particular dispute was not at issue in any of Infinity's cited authority.

11

## IV.  CONCLUSION

For the reasons stated, the Court finds that the threshold question of whether Local 210's grievance constitutes a jurisdictional or non-jurisdictional dispute is subject to arbitration under Article IX.  Accordingly, Infinity's Motion for a Preliminary Injunction is denied.

Infinity's action ultimately seeks permanent injunctive relief.  Were such relief to be granted, it would deprive Local 210 of the opportunity to obtain a determination on the jurisdictional or non-jurisdictional nature of this dispute from the arbitrator this Court has determined is vested with authority to make that determination.  Accordingly, the request for permanent injunctive relief must be denied.  Likewise, Local 210's counterclaim, seeking to compel arbitration of its grievance under Article IX on the ground that it involves a non-jurisdictional dispute, also is denied.   Both parties' requests for costs and fees are denied, and this case dismissed.

## V.  ORDERS

IT IS HEREBY ORDERED, that Plaintiff's Request for a Preliminary Injunction (Docket No. 2) is DENIED.

FURTHER, for the reasons preliminary injunctive relief is denied, the permanent stay requested in the Complaint is also DENIED and the Complaint is DISMISSED.

FURTHER, Defendant's counterclaim is DENIED.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to

close this case.

SO ORDERED.

Dated: June 24, 2009
      Buffalo, New York

                                      <u>/s/William M. Skretny</u>
                                      WILLIAM M. SKRETNY
                                United States District Judge